SEND
ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

O

| | | |
|---|---|---|
| WILLIAM P. GEMPEL, | ) | No. CV 05-5779-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

   Plaintiff William P. Gempel filed a complaint on August 9, 2005, seeking review of the Commissioner's decision denying his application for disability benefits.  The Commissioner answered the complaint on February 7, 2006, and the parties filed a joint stipulation on March 28, 2006.

//
//
//

---

   [1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of the Social Security Administration, is substituted as the defendant.

**BACKGROUND**

**I**

On February 4, 2003 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since November 20, 2001, due to multiple medical conditions. Certified Administrative Record ("A.R.") 48-51, 65, 72. The plaintiff's application was denied on June 23, 2003. A.R. 43-46. The plaintiff then requested an administrative hearing, which was held before Administrative Law Eve B. Godfrey ("the ALJ") on July 26, 2004. A.R. 47, 313-47. On September 24, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 19-28. The plaintiff appealed this decision to the Appeals Council, which denied review on June 11, 2006. A.R. 5-18.

**II**

The plaintiff, who was born on July 20, 1946, is currently 60 years old. A.R. 49, 53. Plaintiff attended three years of college, and has previously worked as a host in a casino. A.R. 66, 82-90, 108.

On November 20, 2001, plaintiff slipped at work and injured his left knee. A.R. 114, 215, 224, 265, 318-20. On January 13, 2002, plaintiff apparently re-injured his knee in a motor vehicle accident. A.R. 230, 234. On January 29, 2002, plaintiff was examined at Clinica Medica Norwalk, where he was diagnosed with a left knee collateral ligament tear and released to return to work with restrictions of no heavy lifting, bending or pulling. A.R. 211-13.
//

On February 20, 2002, Lee B. Silver, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him with a left knee sprain with possible internal derangement. A.R. 214-23. Dr. Silver opined plaintiff could perform sedentary work[2] and was expected to return to his usual and customary work duties. A.R. 219-20.

On March 25, 2002, Darwin J. Henderson, D.C., a chiropractor, examined plaintiff, diagnosed him as having headaches, neck, lumbar and knee sprains, myalgia and myositis, and sprains and strains of the right shoulder and upper arm, and placed him on a course of physical therapy. A.R. 234-39, 276-310. On June 17, 2002, Dr. Henderson noted plaintiff had substantially recovered and was discharged from care. A.R. 230-32. However, on June 21, 2002, Dr. Henderson re-examined plaintiff for workers' compensation purposes, diagnosed him with internal derangement of the left knee and again placed him on a course of physical therapy, which continued until February 11, 2004, when Dr. Henderson found plaintiff had significantly improved and he should be permanent and stationary when next examined. A.R. 131-36, 166-82, 224-29, 251-56, 258-59, 261-63, 311-12.

On July 26, 2002, Thierry Bonnabesse, M.D., examined plaintiff, diagnosed him with cervicogenic headaches, musculoligamentous strains

---

[2] Dr. Silver examined plaintiff under the California's workers' compensation system, in which sedentary work then meant an individual "can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted." Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-15 (Labor Code of California, April 1997). The Schedule for Rating Permanent Disabilities has been revised, effective January 2005.

3

of the cervical and lumbar spine, and left tibial tendinitis with a contusion, and recommended plaintiff continue physical therapy and take anti-inflammatory medication and ice for his knee and also take a muscle relaxant for short-term use. A.R. 240-46.

On September 27, 2002, Jatin Bhatt, M.D., examined plaintiff and diagnosed him with obesity, hypertension, and a left knee sprain. A.R. 125. On May 5, 2003, Dr. Bhatt found plaintiff's hypertension was uncontrolled at 230/140, A.R. 124; however, on May 13, 2003, plaintiff's blood pressure was 180/102. A.R. 123.

On April 26, 2003, Mark Borigini, M.D., examined plaintiff and diagnosed him with morbid obesity, chronic back pain, chest pain, venous stasis changes,[3] and a history of bronchitis, chronic headaches, hypertension and sleep apnea. A.R. 138-41. With regard to plaintiff's back pain, Dr. Borigini found no neurological deficit. A.R. 141. Dr. Borigini opined:

> [plaintiff] is able to stand and walk for 6 hours out of an 8-hour workday with appropriate breaks. Because of the venous stasis changes, it would be in his best interest to keep his legs elevated. He is able to do fine and gross manipulation with his hands. I would keep his lifting to just an occasional 25 lbs.

//

---

[3] Venous stasis is "a cessation or impairment of venous flow, such as with venous insufficiency[.]" Dorland's Illustrated Medical Dictionary, 1695 (29th ed. 2000).

4

Id.

On June 19, 2003, E. Cohenzadeh, M.D., a nonexamining physician, opined plaintiff can occasionally lift and/or carry up to 20 pounds, balance, stoop, kneel, crouch, and crawl, frequently lift and/or carry up to 10 pounds, can stand and/or walk for 2-4 hours in an 8-hour day, and can never climb. A.R. 145-52. Dr. Cohenzadeh discussed the 2-4 hour stand/walk limitation with Dr. Borigini, who concurred with this assessment. A.R. 157.

On July 15, 2003, Roger S. Sohn, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him with left knee osteoarthritis. A.R. 265-74. Bilateral knee x-rays showed degenerative disease with narrowing of the articular cartilage bilaterally. A.R. 269. Dr. Sohn opined plaintiff cannot work in a walking or standing capacity and instead is limited to sedentary work, and Dr. Sohn found vocational rehabilitation was not indicated.[4] A.R. 272. Dr. Sohn also opined plaintiff should lose at least 200 pounds and then have a total knee replacement. Id.

On August 11, 2003, William Madrid, M.D., examined plaintiff, found plaintiff's blood pressure was out of control, and conducted an

---

[4] Under California's workers' compensation system "'[a]n employer is required to provide vocational rehabilitation '[w]hen an employee is determined to be medically eligible, i.e., a Qualified Injured Worker.'" Gamble v. Workers' Comp. Appeals Bd., 143 Cal. App. 4th 71, 81, 49 Cal. Rptr. 3d 36 (2006) (citations omitted). "'Medical eligibility contemplates the injured worker will be permanently precluded from returning to his or her usual occupation or position held at the time of the injury.'" Id. (citation omitted).

1  electrocardiogram, which revealed nonspecific repolarization
2  abnormalities.  A.R. 160-61.  On August 15, 2003, plaintiff had an
3  echocardiogram, which demonstrated an enlarged left ventricle with
4  evidence of mildly reduced left ventricular systolic function in the
5  range of 53%.  A.R. 162.  A Myoview stress test performed
6  September 18, 2003, showed ventricular function essentially within
7  normal limits with an ejection fraction of 56%.[5]  Id.  On
8  September 25, 2003, Dr. Madrid diagnosed plaintiff with diabetes
9  mellitus.  Id.

11  On November 5, 2003, Alex Kutas, M.D., examined plaintiff and
12  diagnosed him with poorly controlled diabetes mellitus.  A.R. 185-89.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).
//

---

[5] Ejection fraction is "the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage.  It is normally 65 $\pm$ 8 per cent; lower values indicate ventricular dysfunction."  Dorland's Illustrated Medical Dictionary at 708.

1    "In determining whether the [ALJ's] findings are supported by
2    substantial evidence, [this Court] must review the administrative
3    record as a whole, weighing both the evidence that supports and the
4    evidence that detracts from the Commissioner's conclusion." Reddick
5    v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,
6    246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably
7    support either affirming or reversing the ALJ's conclusion, the court
8    may not substitute its judgment for that of the ALJ." Reddick, 157
9    F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir.
10   2002).

12   The claimant is "disabled" for the purpose of receiving benefits
13   under the Act if he is unable to engage in any substantial gainful
14   activity due to an impairment which has lasted, or is expected to
15   last, for a continuous period of at least twelve months. 42 U.S.C. §
16   423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden
17   of establishing a prima facie case of disability." Roberts v.
18   Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
19   (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

21   The Commissioner has promulgated regulations establishing a five-
22   step sequential evaluation process for the ALJ to follow in a
23   disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ
24   must determine whether the claimant is currently engaged in
25   substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in
26   the **Second Step**, the ALJ must determine whether the claimant has a
27   severe impairment or combination of impairments significantly limiting
28   him from performing basic work activities. 20 C.F.R. § 404.1520(c).

7

If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity during the period at issue.  (Step One).  The ALJ then found plaintiff has severe "obesity, varicose veins, [a] left knee sprain, hypertension, diabetes and chest pain" (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff is able to perform his past relevant work as a poker host; therefore, he is not disabled.  (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,
//

the ALJ found:

> [plaintiff] is only limited by his inability to lift and/or carry more than twenty pounds occasionally and ten pounds frequently, an inability to stand and/or walk more than two hours in an eight[-]hour workday, an inability to sit more than six hours in an eight[-]hour workday, a complete inability to climb and a limitation to occasional balancing, stooping, kneeling, crouching or crawling.

A.R. 27. The plaintiff, however, contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ: (a) improperly rejected the opinions of examining physicians Drs. Borigini and Sohn and treating chiropractor Dr. Henderson,[6] (b) did not properly

---

[6] The ALJ did not have the opportunity to consider Dr. Sohn's opinion, or much of the other medical evidence, since this evidence was first presented to the Appeals Council after the ALJ issued her decision. Although the ALJ held the record open to allow plaintiff's attorney the opportunity to supplement the record, see Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ may satisfy duty to develop the record by "keeping the record open after the hearing to allow supplementation of the record."), he only provided the ALJ with 25 additional pages of medical records from Dr. Henderson, A.R. 166-90, some of which duplicated the sparse evidence already submitted. See A.R. 131-36, 166-74. Rather, plaintiff's attorney subsequently provided the Appeals Council with 122 pages of medical records following the ALJ's decision. Yet, all of this medical evidence predates the administrative hearing and should have been presented to the ALJ in the first instance. Nevertheless, since "the Appeals Council affirmed the decision of the ALJ denying benefits to [plaintiff, the additional] evidence is part of the record on review to this court." Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.), cert. denied, 519 U.S. 881 (1996); Bustamante v. Massanari, 262 F.3d 949, 952 (9th Cir. 2001).

9

1  consider plaintiff's obesity, and (c) erroneously determined plaintiff
2  is not credible.

### a. Medical Opinions:

The ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Widmark, 454 F.3d at 1066.

Examining physician Dr. Borigini opined plaintiff is able to occasionally lift 25 pounds, stand and/or walk for 2-4 hours in an 8-hour day, do fine and gross manipulations, and "it would be in his best interest to keep his legs elevated" due to "venous stasis changes[.]" A.R. 141, 157. The ALJ accepted Dr. Borigini's opinions, except for his recommendation that plaintiff keep his legs elevated, which was rejected on the ground that "the rest of the medical record fails to reflect evidence of a significant condition warranting such a restriction." A.R. 26. Although an ALJ may properly reject an examining physician's opinion that is inconsistent with the medical record, Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999), plaintiff contests the ALJ's reasoning,
//
//

1  noting Dr. Silver also found plaintiff had "venous stasis changes."[7]
2  While this is true, Dr. Silver did **not** recommend plaintiff keep his
3  legs elevated; to the contrary, Dr. Silver opined plaintiff can
4  perform sedentary work and should be able to return to his usual and
5  customary duties as a poker host.  A.R. 217-20.  Therefore, the ALJ's
6  rejection of Dr. Borigini's opinion was proper.  Batson, 359 F.3d at
7  11195; Morgan, 169 F.3d at 602.

9      Moreover, Dr. Sohn's opinion that plaintiff cannot work in a
10 walking or standing capacity but instead is limited to sedentary work
11 further supports the ALJ's RFC finding and Step Four determination,
12 rather than contradicts them, since it is well documented that
13 plaintiff's prior work was sedentary work that required no significant
14 standing or walking.[8]  A.R. 66, 83, 319-20, 345.  Thus, the Appeals
15 Council properly found Dr. Sohn's opinion "does not provide a basis
16 for changing the [ALJ's] decision."  A.R. 6.

18      However, Dr. Henderson also opined plaintiff should keep his legs

---

[7] On the other hand, Dr. Kutas specifically found "no vascular insufficiency signs otherwise[,]" and made no recommendation that plaintiff should keep his legs elevated, A.R. 187, which supports the ALJ's RFC finding and Step Four determination that plaintiff can perform his past relevant work.

[8] Dr. Sohn described plaintiff's casino work as "predominantly sedentary with frequent standing." A.R. 265. Dr. Sohn also opined plaintiff can perform sedentary work, as that work is defined under California's workers' compensation guidelines (see footnote 2 above), which provide an individual can perform work "predominantly in a sitting position . . . with some degree of walking and standing being permitted." Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-15 (Labor Code of California, April 1997).

elevated as much as possible.  A.R. 190.  The ALJ also rejected Dr. Henderson's opinions, finding his assessments of temporary total disability "are conclusory in nature," "are not supported by the overall medical record" and, as a chiropractor, Dr. Henderson's "opinions . . . are not entitled to significant weight."  A.R. 26.  In making these determinations, the ALJ acted properly since a chiropractor is not an acceptable medical source, and "there is no requirement that the ALJ accept or specifically refute such evidence."  Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), reversed on other grounds, Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); 20 C.F.R. § 404.1513(a, e); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (ALJ properly discounted chiropractor's opinion as unacceptable source and chiropractor's opinion was unsupported by medical evidence); Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995) ("[A] chiropractor's opinion is not a medical opinion . . . [and] the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before [her.]").

**b.  Obesity:**

"Obesity is a complex, chronic disease characterized by excessive accumulations of body fat."  Social Security Ruling ("SSR") 02-01p, 2000 WL 62809, *2 (S.S.A.).[9]  "Obesity is a medically determinable

---

[9] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations.  Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996); Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).  Although Social Security Rulings do not have the force of law, Chavez, 103 F.3d at 851, once published, they are binding upon ALJs and the

12

1  impairment that is often associated with disturbance of the
2  musculoskeletal[, respiratory, and cardiovascular] system[s], and
3  disturbance of [these] system[s] can be a major cause of disability in
4  individuals with obesity."  20 C.F.R. § 404, Subpart P, App. 1,
5  Listing 1.00Q, 3.00I, and 4.00F.  "Obesity may also cause or
6  contribute to mental impairments such as depression."  SSR 02-01p at
7  *3.  Under Social Security Ruling 02-01p,

> overweight and obesity [are classified] in adults according
> to Body Mass Index (BMI).  BMI is the ratio of an
> individual's weight in kilograms to the square of his or her
> height in meters (kg/m2).  For adults, both men and women,
> the Clinical Guidelines describe a BMI of 25-29.9 as
> "overweight" and a BMI of 30.0 or above as "obesity."  [¶]
> The Clinical Guidelines recognize three levels of obesity.
> Level I includes BMIs of 30.0-34.9.  Level II includes BMIs
> of 35.0-39.9.  Level III, termed "extreme" obesity and
> representing the greatest risk for developing obesity-
> related impairments, includes BMIs greater than or equal to
> 40.

Id.  Here, Dr. Borigini found plaintiff is 66-1/2 inches tall and weighs 388 pounds, which equals BMI of 61.7.  A.R. 140.  Drs. Silver and Sohn found plaintiff is 5'7" and weighs 400 pounds, A.R. 217, 267, which equals BMI of 62.6.  Thus, plaintiff's BMI places him in the

---

Commissioner.  Holohan, 246 F.3d at 1202-03 n.1; Gatliff v. Comm'r of the Soc. Sec. Admin., 172 F.3d 690, 692 n.2 (9th Cir. 1999).

13

"extreme" obesity category.

In <u>Celaya v. Halter</u>, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit held an administrative law judge committed legal error by failing to consider a claimant's obesity, even when obesity was not specifically raised as an impairment, in the following circumstances:

> First, [obesity] was raised implicitly in [claimant's] report of symptoms.  Second, it was clear from the record that [claimant's] obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses.  Third, in light of [claimant's] pro se status, the ALJ's observation of [claimant] and the information on the record should have alerted him to the need to develop the record in respect to [claimant's] obesity.

<u>Id.</u> at 1182.  However, the circumstances set forth in *Celaya* are not present here.  First, as noted above, plaintiff was represented by counsel at the administrative hearing and continues to be represented by counsel here.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005).  Second, the ALJ here found plaintiff's obesity is a severe impairment, A.R. 27, and considered plaintiff's obesity in relation to his other impairments in determining plaintiff can perform his past relevant work.  As the ALJ explained:

> Notwithstanding the [plaintiff's] significant obesity, there is no evidence in the medical record of related

1        complications such as severe peripheral vascular disease,
2        hypertensive cardiovascular disease or serious pulmonary
3        impairment resulting from his obesity.  Additionally, aside
4        from a left knee injury related to a slip and fall accident,
5        . . . there is no evidence of any significant damage to
6        weight bearing joints, as documented by laboratory testing,
7        stemming from the [plaintiff's] obesity condition.

A.R. 24.  Further, the ALJ relied on the opinions of examining physician Dr. Borigini and nonexamining physician Dr. Cohenzadeh, both of whom considered plaintiff's obesity in determining plaintiff can perform his past relevant work.  Tonapetyan, 242 F.3d at 1149; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997).  Additionally, the opinions of Drs. Silver and Sohn support the ALJ's Step Four determination that plaintiff can perform his past relevant work despite his obesity.  Therefore, "the ALJ adequately considered [plaintiff's] obesity in his RFC determination." Burch, 400 F.3d at 684.

### c.  Credibility:

The plaintiff testified he slipped and fell at work on November 20, 2001, tearing a ligament behind his left knee and a piece of bone where the ligament attaches to the knee.  A.R. 318-20.  The plaintiff also testified he has daily headaches, diabetes, poorly-controlled hypertension, deep vein thrombosis, which causes swelling in his lower legs, and chronic bronchitis.  A.R. 321, 330-32, 335. Further, plaintiff testified he injured his back in 1980, and continues to experience intermittent pain in his lower back, and pain

in his neck, upper back, right shoulder and hip.  A.R. 325, 330-31.
The plaintiff stated his knee begins to hurt if he tries to walk 50
yards, and he has problems climbing stairs or walking over uneven
ground or up hills.  A.R. 325-28.  The plaintiff testified his feet
are constantly numb and cold, and they swell up when he sits, so he
spends 80-90% of each day lying down.  A.R. 328-29.  The plaintiff
also stated that if he stands up, his back will go out within a couple
of minutes, and he cannot lift his leg.  A.R. 331.  Furthermore, the
plaintiff indicated he first had a "heart attack" 15 years ago, he has
had serious "heart attacks" lasting 12-15 hours, and his heart bothers
him daily.  A.R. 338, 340-41.  Additionally, the plaintiff testified
he does not tolerate stress very well.  A.R. 341.  Finally, plaintiff
has been told he needs a total knee replacement, but he should first
lose weight.  A.R. 320.[10]

Once a claimant has presented objective evidence he suffers from
an impairment that could cause pain or other nonexertional
limitations,[11] the ALJ may not discredit the claimant's testimony
"solely because the degree of pain alleged by the claimant is not

---

[10]  Although the ALJ also found plaintiff is not credible because he stated he requires knee replacement surgery, "which is not corroborated by the medical record" and testified "he needs to lose 200 pounds before he can undergo this procedure[,]" A.R. 26, the medical records produced to the Appeals Council **after** the administrative hearing support plaintiff's testimony.  A.R. 272. Therefore, this ground does not support the ALJ's adverse credibility determination.

[11]  "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

16

supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, she "'must provide specific, cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Moisa, 367 F.3d at 885; Bunnell, 947 F.2d at 345. Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan, 169 F.3d at 599; Greger, 464 F.3d at 972.

In determining the plaintiff is not credible, the ALJ initially found that "the objective medical record does not show findings or medically determinable impairments corroborative of the [plaintiff's] complaints." A.R. 23, 26. Specifically, the ALJ noted that although plaintiff complained of having eight heart attacks in 2003, the medical record does not support this testimony. A.R. 24, 160. Additionally, the ALJ found:

> [N]otwithstanding the [plaintiff's] complaints of debilitating leg and chest pain and a pulmonary impairment, the consultative examiner found full range of motion at the extremities, no evidence of any neurological deficits, and no evidence of cardiac or pulmonary impairment. Further, the [plaintiff's] diabetes appears adequately controlled with medication. Although the [plaintiff] has significantly

17

1     elevated blood pressure, the lack of hypertension related
2     complications and symptoms indicate that this condition is
3     not severely limiting.

5 A.R. 26.

7     The ALJ may properly disregard a claimant's self-serving
8 statements that are unsupported by any objective findings, Flaten v.
9 Sec'y of Health & Human Servs., 44 F.3d 1453, 1463 (9th Cir. 1995);
10 Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990), and that
11 are inconsistent with clinical findings.  Burch, 400 F.3d at 681;
12 Morgan, 169 F.3d at 599-600.  Moreover, the ALJ may properly consider
13 "evidence suggesting that [claimant] responded well to treatment" in
14 making a negative credibility determination.  Crane v. Shalala, 76
15 F.3d 251, 254 (9th Cir. 1996); Celaya, 332 F.3d at 1181.

17     The ALJ further noted that **no** treating or examining physician had
18 opined plaintiff is disabled or unable to perform his past relevant
19 work, A.R. 23-26, and this ground also supports the ALJ's adverse
20 credibility determination.  See Matthews v. Shalala, 10 F.3d 678, 680
21 (9th Cir. 1995) (substantial evidence supports finding claimant can do
22 narrow range of medium work where no examining physician concluded
23 claimant is totally disabled); Harper v. Sullivan, 887 F.2d 92, 96-97
24 (5th Cir. 1989) (substantial evidence supports ALJ's conclusion
25 claimant's complaints are not credible when "[n]o physician stated
26 that [the claimant] was physically disabled").

28     Finally, the ALJ noted plaintiff has taken no steps to lose

weight, stating:

> Although he testified that he considered gastric bypass surgery, the [plaintiff] testified that he does not want to have this operation. Further, the [plaintiff] has been unwilling to lose weight himself by adopting serious diet and exercise changes into his lifestyle. The [plaintiff's] refusal to improve his health by losing weight negatively impacts his credibility.

A.R. 26. The plaintiff challenges this statement, arguing the ALJ cannot deny an obese claimant disability benefits for failure to lose weight without making specific factual findings that the claimant's obesity is remediable, relying on Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) and Hammock v. Bowen, 879 F.2d 498, 503-04 (9th Cir. 1989) to support his argument. However, plaintiff misstates the import of the ALJ's finding, which uses plaintiff's lack of motivation to lose weight as a ground to support a negative credibility determination.[12] It is well established that an ALJ may properly consider the claimant's lack of motivation in making an adverse credibility determination. Thomas, 278 F.3d at 959; Saelee, 94 F.3d at 522. Thus, "[t]he ALJ gave specific, clear and convincing reasons

//
//

---

[12] Indeed, plaintiff testified that although he has been advised to lose weight, food has been his "main joy in life for the past 20 years" and "[i]f I don't eat I don't know what pleasure am I supposed to get." A.R. 321-22, 343-44.

19

for discounting [plaintiff's] testimony." <u>Thomas</u>, 278 F.3d at 959; <u>Greger</u>, 464 F.3d at 972.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied, and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: March 20, 2007         /s/ Rosalyn M. Chapman
                                                   ROSALYN M. CHAPMAN
                                      UNITED STATES MAGISTRATE JUDGE

R&R-MDO\05-5779.MDO
3/20/07